No. 23-11036
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

Roland McCarthy,

Plaintiff / Appellant,

v.

City of Cordele, Georgia and Joshua Deriso,
in his individual and official capacities,

Defendants / Appellees.

_____

On Appeal from the United States District Court
For the Middle District of Georgia – Albany Division
_____

## BRIEF OF APPELLANT ROLAND MCCARTHY
_____

Andrew Y. Coffman
Georgia Bar No. 173115
acoffman@pcwlawfirm.com
J. Daniel Cole
Georgia Bar No. 450675
dcole@pcwlawfirm.com
**PARKS, CHESIN & WALBERT, P.C.**
75 14th Street, N.E., 26th Floor
Atlanta, GA 30309
T: (404) 873-8000
F: (404) 873-8050

*Counsel For Appellant*

Appeal No. 23-11036, MCCARTHY V. CITY OF CORDELE, et al.

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with FRAP 26.1 and 28(a), and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, Appellant certifies that the following persons and entities, listed in alphabetical order, have an interest in the outcome of this appeal:

1.    City of Cordele, Georgia, *Appellee*

2.    Coffman, Andrew Y., *counsel for Appellant*

3.    Cole, J. Daniel, *counsel for Appellant*

4.    Deriso, Joshua, *Appellee*

5.    Freeman, Mathis & Gary, LLP, *counsel for Appellee*

6.    Gardner, Honorable Leslie A., *District Court Judge*

7.    Hill, Michael M., *counsel for Appellee*

8.    McCarthy, Roland, *Appellant*

9.    Parks, Chesin & Walbert, P.C., *counsel for Appellant*

10.    Spearman, Kelli N., *counsel for Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Roland McCarthy respectfully requests oral argument. The district court dismissed McCarthy's race discrimination claims despite allegations setting forth direct evidence of discriminatory intent. The district court reached its decision by applying a stringent evidentiary standard of proof rather than the "facial plausibility" standard applied in the Eleventh Circuit. Because motions to dismiss have become ubiquitous since the Supreme Court's decisions in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), it is important for this Court to reemphasize and clarify the appropriate pleading standard under Rule 8.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................ i

STATEMENT REGARDING ORAL ARGUMENT .................................. ii

JURISDICTIONAL STATEMENT ............................................................ vii

STATEMENT OF THE ISSUES ................................................................ 1

STATEMENT OF THE CASE ................................................................... 1

I.     Procedural History and Dispositions in the District Court ......... 1

II.    Statement of Facts ..................................................................... 2

III.   Standard of Review .................................................................... 4

SUMMARY OF ARGUMENT ........................................................................ 5

ARGUMENT AND CITATION TO AUTHORITY ........................................ 6

A.    The District Court Applied a Heightened Pleading Standard for Plaintiff's Response to the Motion to Dismiss ........................... 6

B.    The Lower Court Erred By Narrowly Construing Pled Facts and Drawing Adverse Inferences Against Plaintiff ......................... 13

(1) ......... Plaintiff is not required to prove that each commissioner voted with discriminatory intent ................................................. 14

(2) ....... This district court improperly rejected McCarthy's Cat's Paw theory ................................................................................... 17

C.    It was Error to Dismiss McCarthy's § 1981 Claim Against Deriso Individually .................................................................. 18

D.    The District Court Erred by Disallowing Plaintiff the Right to Amend his Complaint. ............................................................. 20

CONCLUSION ............................................................................................ 23

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, ........................... 1

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................... ii

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..................................................... ii

*Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012) ................................6

*Childers v. Wayne Cnty. Bd. of Educ.*, No. CV207-70, 2007 WL 9702358 (S.D.Ga. Dec.17, 2007)……………………………………………………………………….. 22

*Edwards v. Wallace Community College,* 49 F. 3d 1517 (11th Cir. 1995) ..............12

*Foman v. Davis*, 371 U.S. 178 (1962)……………………………………………….20

*Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir.2007)....................................4

*Griffin v. City of Jacksonville*, 762 Fed. Appx. 965 (11th Cir. 2019) .....................19

*Henley  v. Turner Broad. Sys., Inc.*, 267 F.Supp.3d 1341 (N.D. Ga. 2017).............7

*Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338 (11th Cir. 2013) ...................4

*Llampallas v. Mini-Cirs., Lab, Inc.,* 163 F.3d 1236 (11th Cir. 1998) ....................17

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,* 138 S. Ct. 1719 (2018)....................................................................................................................15

*Matthews v. Columbia Cnty.*, 294 F.3d 1294 (11th Cir. 2002) ...............................14

*Quinn v. Monroe County,* 330 F. 3d 1320 (11th Cir. 2003) ....................................19

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993).........................................12

*Stimpson v. City of Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999)...........................17

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)...............................................11

*Thomas v. Town of Davie*, 847 F.2d 771 (11th Cir. 1988)………………………...20

*Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002)…….21

*Wright v. Southland Corp.,* 187 F.3d 1287, 1290 (11th Cir. 1999) ........................... 6

*Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291 (11th Cir. 1988) ........................... 17

**Statutes**

28 U.S.C. § 1291 .............................................................................................. vi

28 U.S.C. §§ 1331 and 1343(3) ....................................................................... vi

42 U.S.C. § 1981 through 42 U.S.C. § 1983 ............................................... 1

VII, 42 U.S.C. § 2000e *et seq.*, ................................................................... 1

**Rules**

Fed. R. Civ. P.
8(a)(2)……………………………………………………………………6

## JURISDICTIONAL STATEMENT

(A)    The district court had jurisdiction over the complaint filed by Plaintiff/Appellant Roland McCarthy under 28 U.S.C. §§ 1331 and 1343(3) because it involved questions of federal law.

(B)    This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final dispositive order dismissing McCarthy's claims via a motion to dismiss.

(C)    Final judgment was entered on March 29, 2023 [Doc. 13]. McCarthy filed a timely Notice of Appeal on March 31, 2023 [Doc. 15], within thirty (30) days of the dispositive order. Therefore, this is a timely appeal pursuant to Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.

(D)    This appeal is from a final judgment that disposed of all claims.

## STATEMENT OF THE ISSUES

The district court improperly found McCarthy failed to include sufficient facts in his complaint to survive a motion to dismiss. To reach this conclusion, the court relied upon summary judgment, trial, and post-trial evidentiary standards, rather than the appropriate facial plausibility standard.

## STATEMENT OF THE CASE

### I.    Procedural History and Dispositions in the District Court

McCarthy filed a complaint on May 27, 2022, asserting claims of racial discrimination against Defendant City of Cordele, Georgia ("Cordele" or "City") and Defendant Joshua Deriso ("Deriso"), the City Commission Chair, under Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 through 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment. Doc. 1. Defendants filed a motion to dismiss on July 26, 2022. Docs. 4 and 5. Plaintiff timely filed his response and Defendants filed a reply. Docs. 7 and 8.

The district court stayed discovery while the motion to dismiss was pending. Doc. 12. On March 29, 2023, the district court granted Defendants' motion, dismissing Plaintiff's Title VII and § 1981 claims and declining to exercise supplemental jurisdiction over the remaining state law breach of contract claim. Doc. 13.

## II.    Statement of Facts

The City of Cordele initially hired McCarthy, a white male, as its Finance Director in June 2017. Doc. 1, ¶ 9. In December of 2020, Cordele's City Manager, Edward Beach, died. *Id.* ¶ 13. Joshua Deriso, who is black, and at the time a private citizen, turned to Facebook to promote his preference that the City use race in its decision to replace Mr. Beach: "Cordele: The new City Manager should be black…." *Id.* ¶ 20. Contrary to Deriso's race-based preference, the City promoted McCarthy to fill the City Manager post in January of 2021. *Id.* ¶ 14. Following McCarthy's appointment as City Manager, Deriso complained on Facebook in February: "Cordele's heads of departments are not diverse at all! Structure needs to change … more blacks!!!" *Id.* ¶ 21.

In August of 2021, Deriso announced his candidacy for Chairman of the Cordele City Commission. *Id.* ¶ 17. Race discrimination against white City employees was the centerpiece of his campaign. Deriso pledged to empower "an entirely African American Commission, prioritizing African American businesses, and replacing Caucasian employees with African Americans." *Id.* ¶ 18. Among his race-based promises, on October 13, 2021, Deriso published on social media that "As Chair … the first 90 days will be important in setting the new direction of Cordele." This "new direction" expressly included "hir[ing] a new City Manager (qualified, of color; ideally a woman … diversity matters in gender also)." *Id.* ¶ 19.

On election night, November 2, 2021, Deriso repeated his platform to "replace Caucasian department heads with African Americans if elected." *Id.* ¶ 22. During the runoff campaign, Deriso again took to Facebook and expressed his plan to foster an "all black" City Commission because, "it is time for us [meaning black residents] to run our city." *Id.* ¶ 23. Deriso won the runoff election for chair of the Cordele City Commission on November 30, 2021. *Id.* ¶ 25.

McCarthy's contract as City Manager was to expire on December 31, 2021; so, the Commission renewed McCarthy's one-year contract on December 21, 2021. *Id.* ¶ 24 and Doc. 1-2 (Exhibit to Complaint). Two weeks later, on January 4, 2022, the newly elected commissioners were sworn into office at the first meeting of the new year. Doc 1, ¶ 27. Prior to the January 4 meeting, Deriso, joined by Commissioner Royce Reeves, who is also black, told McCarthy that "they" were replacing him with an African American candidate. *Id.* ¶ 35. When McCarthy suggested his willingness to return to his Finance Director position, "Deriso and Commissioner Reeves told McCarthy that would not be possible because McCarthy ***did not look like them***." *Id.* ¶ 36 (emphasis added). The City, with a commission now chaired by Deriso, wasted no time fulfilling Deriso's and Reeves's racist agenda, immediately voting to replace plaintiff with a black female candidate – just as Deriso promised on October 13, 2021. *Id.* ¶ 29. The vote broke along racial lines, with all three black commissioners voting to replace McCarthy and the sole white

commissioner opposing the decision. *Id.* ¶ 30. Based on Deriso's series of openly racist political positions, as well as his leadership role as chair, McCarthy reasonably alleged that "Deriso led, directed, and encouraged [the commissioners to] replac[e] McCarthy with an African American candidate." *Id.* ¶ 31. McCarthy did not limit his allegations of racial discrimination to just Deriso and/or Reeves. He pinned responsibility squarely on the City of Cordele, alleging, "[t]he City's decision to terminate McCarthy from his City Manager position was motivated by his race in violation of Title VII," *Id.* ¶ 47, and thus the "City's decision to terminate McCarthy from his City Manager position because of his race [was] in violation of 42 U.S.C. § 1981 through 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *Id.* ¶ 52.

## III.    Standard of Review

This Court reviews a district court's order granting a motion to dismiss *de novo*. *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1343–44 (11th Cir. 2013). The Court "must accept the facts as set forth in the plaintiff's complaint as true, and it's consideration is limited to those facts contained in the pleadings and attached exhibits." *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir.2007)).

## SUMMARY OF ARGUMENT

McCarthy alleged substantial facts supporting claims of discrimination under Title VII and § 1981. Despite no opportunity to engage in discovery, McCarthy provided detailed evidence, both direct and circumstantial, demonstrating Deriso's and the City Commission's discriminatory motives, including racially-charged promises and threats on social media posts from the incoming chairman, verbal comments from another commissioner, a vote split along racial lines immediately following the seating of new commissioners, and that McCarthy was replaced by someone outside of his protected class. McCarthy was summarily ousted just two weeks after the Commission voted to approve an additional one-year contract as City Manager. While there was substantial direct evidence of some of the commissioners' discriminatory motives, McCarthy pled that the City, acting through its Commission, terminated McCarthy because of his race by replacing him with a black candidate in a vote along racial lines. The district court ignored McCarthy's factual allegations, held him to an impossible evidentiary burden without the benefit of discovery, and drew adverse inferences against him. In other words, the district court did the opposite of what precedent in this Circuit requires when considering a motion to dismiss. As a result of these legal errors, the decision below should be reversed and the case remanded for discovery and trial.

## ARGUMENT AND CITATION TO AUTHORITY

**A.    The District Court Applied a Heightened Pleading Standard for Plaintiff's Response to the Motion to Dismiss**

McCarthy was only required to plead "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required at the complaint stage, which is understandable given that a plaintiff's knowledge is limited before discovery. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Wright v. Southland Corp.,* 187 F.3d 1287, 1290 (11th Cir. 1999) ("unlike some other torts, in which state of mind can be inferred from the doing of the forbidden act, the employer's state of mind cannot be inferred solely from the fact of the adverse employment action.")  Because the state of mind of decisionmakers is not easily inferred, courts have long relied upon the *McDonnell-Douglas* framework to evaluate circumstantial evidence for plaintiffs asserting employment discrimination claims. *Wright*, 187 F.3d at 1290. Evidence supporting inferences of discriminatory intent can only be secured through discovery.

At the complaint stage, a plaintiff bears the permissive "facial plausibility" standard. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means "more than a sheer possibility that a defendant has acted unlawfully," but still less than a

"probability" that the defendant will be liable. *Id.* So long as the plaintiff's allegations are "enough to raise a right to relief above the speculative level," the claim should not be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plausible facts "raise a reasonable expectation that discovery could supply additional proof of [a defendant's] liability." *Chaparro,* 693 F. 3d at 1337.

While acknowledging the lenient pleading standard in the "Legal Standard" section of its order, the district court relied upon numerous decisions applying evidentiary standards applicable at summary judgment or even trial. Thirty (30) of the thirty-two (32) cases the district court cited as authority were decided at summary judgment, trial, or post-trial. Only one case cited by the lower court was a ruling on a motion to dismiss substantive employment claims. *See Henley  v. Turner Broad. Sys., Inc.*, 267 F.Supp.3d 1341 (N.D. Ga. 2017).

Below is a summary of the cases the district court cited in its analysis (excluding cases cited in a footnote related to a separate issue):

| Citation | Stage of Case |
|---|---|
| *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 998 (11th Cir. 1990) | Summary Judgment |
| *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) | Trial / Judgment as a Matter of Law |
| *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir. 1994) | Preliminary Injunctive Relief/Housing |
| *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) | Trial / Verdict |
| *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) | Summary Judgment |

| | |
|---|---|
| *Flowers v. Troup Cnty., Ga. Sch. Dist.*, 803 F.3d 1327, 1335 n.7 (11th Cir. 2015) | Summary Judgment |
| *Gilham v. Athens Land Tr., Inc.*, 510 F. Supp. 2d 1349, 1356 (M.D. Ga. 2007) | Summary Judgment/MTD filed by Plaintiff for Her Own Claims at Late Stage |
| *Henley v. Turner Broad. Sys., Inc.*, 267 F.Supp.3d 1341, 1352 (N.D. Ga. 2017) | Motion to Dismiss |
| *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) | Summary Judgment |
| *Holmes v. City of Ft. Pierce, Fla.*, No. 20-13170, 2022 WL 247976, at *4 (11th Cir. Jan. 27, 2022) | Summary Judgment |
| *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.6 (11th Cir. 2018) | Summary Judgment |
| *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 702 (1989) | Trial / Judgment Notwithstanding the Verdict |
| *Kelley v. Howden*, No. 21-13573, 2022 WL 17259720, at *3 (11th Cir. Nov. 29, 2022) | Summary Judgment |
| *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) | Trial/Post-Settlement award of fees litigated to SCOTUS |
| *Llampallas v. Mini-Cirs., Lab, Inc.*, 163 F.3d 1236, 1248 (11th Cir. 1998) | Trial |
| *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010) | Summary Judgment |
| *Mason v. Village of El Portal,* 240 F.3d 1337, 1339 (11th Cir. 2001) | Summary Judgment |
| *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) | Trial / Verdict |
| *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) | Summary Judgment |
| *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) | Summary Judgment |
| *Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001) | Summary Judgment |
| *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) | Summary Judgment |
| *Rollins v. Ala. Cmty. Coll. Sys.*, 814 F. Supp. 2d 1250, 1259 n.1 (M.D. Ala. 2011) | Summary Judgment |

| | |
|---|---|
| *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015) | Summary Judgment |
| *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) | Summary Judgment |
| *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1324–25 & n.14 (11th Cir. 2011) | Summary Judgment |
| *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) | Trial/Judgment as a Matter of Law |
| *Templeton v. Bessemer Water Serv.*, 154 F. App'x 759, 765 (11th Cir. 2005) | Summary Judgment |
| *Thompson v. Tyson Foods, Inc.*, 939 F. Supp. 2d 1356, 1364 (M.D. Ga. 2013) | Summary Judgment |
| *Trotter v. Bd. of Trs. of Univ. of Ala.*, 91 F.3d 1449, 1457 (11th Cir. 1996) | Trial / Judgment as a Matter of Law |
| *Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.20 (11th Cir. 1999) | Summary Judgment |
| *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294 (11th Cir. 1988) | Trial / Judgment Notwithstanding the Verdict |

In his complaint, McCarthy alleged that Deriso campaigned for the Commission Chair position using racially discriminatory themes, including multiple pledges to replace McCarthy with a person "of color" and that the city employees "should be black." Deriso specifically promised his future constituents that these changes would begin within the "first 90 days" of his chairmanship. McCarthy relied upon detailed facts and included exhibits from Deriso's social medial accounts. Despite the City Commission's recent decision to re-appoint McCarthy for another year as City Manager, once Deriso was elected, he and another black member of the Commission, Reeves, told McCarthy he would be replaced with a black candidate at the Commission's first meeting of 2022. When McCarthy proposed a demotion

instead, Deriso and Reeves rejected the idea because McCarthy "did not look like them," an overt reference to the color of his skin. When the newly elected commissioners voted to terminate him, the vote split along race lines, with three black commissioners voting to replace McCarthy, and the only white member voting to retain him. These deliberations took place under the cloak of executive session where Deriso could influence the voting Commission members or where other commissioners could have voiced their own discriminatory motives. Based on these facts, McCarthy plausibly alleged that "[t]he City's decision to terminate McCarthy from his City Manager position was motivated by race in violation of Title VII," and that "[t]he City's decision to terminate McCarthy from his City Manager position because of his race [was] in violation of 42 U.S.C. § 1981…." Notwithstanding these plausible allegations, supported by detailed facts and reasonable inferences, the district court inexplicably wrote, "Plaintiff does not allege that the Commission itself acted with an unconstitutional motive." Doc 13, pp. 5-6. The district court could only have reached this conclusion by applying an improper pleading standard that demanded proof rather than mere factual allegations.[1]  Nonetheless, as the court conceded in a footnote explaining its rejection of Plaintiff's request for the opportunity to amend the complaint, "it is not apparent that a more carefully drafted

---

[1] Indeed, simply phrasing an allegation in the manner suggested by the district court would amount to nothing more than a conclusion.

complaint would survive dismissal ....” *Id.,* p. 5, n.3). Thus, virtually no level of pleading could have satisfied the district court's demanding standard.

In keeping with its application of a higher pleading standard, the district court repeatedly referenced McCarthy's failure to present "evidence" to support his allegations. *Id.*, pp. 6-8, 11. Of course, McCarthy was never allowed to engage in discovery to develop "evidence." McCarthy pled facts that, when viewed in a light most favorable to him, would more than plausibly support a claim of racial discrimination. These facts included screenshots of overt discriminatory intent by the Chair of the City Commission, a plan described by Deriso to implement discriminatory hiring practices once he became Chair, discriminatory comments by another commissioner immediately preceding the decision to fire McCarthy, a vote split along racial lines, and that McCarthy was replaced by a black candidate just two weeks after his contract was renewed.

Plaintiffs in employment cases are not required to plead *prima facie* cases at the complaint stage. *Twombly*, 550 U.S. at 585 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002)). Even though not required, McCarthy's allegations easily establish a *prima facie* case of discrimination under Title VII and § 1981, because he: (1) belongs to a protected class, (2) was qualified to do the job, (3) was discharged, and (4) was replaced by a candidate of a different race. *Edwards v.*

*Wallace Community College,* 49 F. 3d 1517, 1521 (11th Cir. 1995)*. This alone should have been sufficient for McCarthy's claims to survive a motion to dismiss.

As a matter of law, the *prima facie* case established a presumption that the City of Cordele fired McCarthy because of his race. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-507 (1993). Here, McCarthy alleged much more. He alleged that a candidate running to become the Chairman of the Commission planned to replace white employees with black candidates, that he specifically targeted McCarthy and wanted to replace him with a black female in the first 90 days after the election, that commissioners stated they would replace him with a black candidate, that the commissioners voted along racial lines and did, in fact, replace him with a black candidate that was pre-identified, and, therefore, that **the City** discriminated against him. McCarthy's complaint was filled with direct evidence that Deriso intended to use the power of his new office to reshape the racial makeup of the city's workforce.

The district court erred by disregarding the lenient pleading standard, failing to draw reasonable inferences in a light favorably construed in McCarthy's favor, and employing a heightened "evidentiary" pleading standard.

**B.    The Lower Court Erred By Narrowly Construing Pled Facts and Drawing Adverse Inferences Against Plaintiff**

The district court narrowly construed the pled facts to suggest that McCarthy only alleged Deriso as the discriminatory actor and that there was no "evidence" that the majority of the Cordele City Commission voted to terminate McCarthy with discriminatory intent. Doc. 13, pp. 6-7. In other words, the district court *assumed* that the black members of the commission voted to fire McCarthy based on legitimate considerations. As Plaintiff argued below, there is no evidence in the record to support this assumption. A plain reading of the facts in the complaint demands a reasonable inference that the Commission voted to replace McCarthy because he is white. Deriso pledged to use the power of his office to discriminate against McCarthy. One voting member, Reeves, told McCarthy he would be replaced and could not remain in a lesser role because he did not "look like them." A reasonable inference can be drawn that the black commissioners, who voted along racial lines, embraced Deriso's and Reeves' new vision and were motivated by McCarthy's race. How else would one explain the abrupt reversal of the Commission's decision to retain McCarthy just two weeks earlier? At a minimum, it is reasonable to conclude, as McCarthy alleged, that Deriso, as Chair of the Commission, influenced the voting members during executive session, or before, to fulfill one of his campaign promises. McCarthy marshaled significant evidence of

discriminatory intent, even though he is not required to prove the state of mind of each commissioner at the pleading stage. *See Wright*, 187 F.3d at 1290.

Despite McCarthy's clear factual allegations that Deriso was a driving force behind terminating him because of his race, and that at least one other commissioner admitted his intent to vote with discriminatory intent, the district court was not convinced. The district court rejected all of McCarthy's allegations based on two factors: (1) Deriso did not participate in the vote to terminate McCarthy and (2) that McCarthy could not prove that a majority of the voting commissioners acted with discriminatory intent. The district court rendered its judgment in the absence of any evidence contradicting the presumption arising from McCarthy's *prima facie* case. Instead, the district court relied on adverse inferences that Deriso took no discriminatory actions and that the commissioners voted based on non-discriminatory motivations, neither of which are supported by the allegations in the complaint.

**(1)    Plaintiff is not required to prove that each commissioner voted with discriminatory intent**

In support of its view that McCarthy failed to allege each member of the Commission voted based on an unconstitutional motive, the district court relied on *Matthews v. Columbia Cnty.*, 294 F.3d 1294 (11th Cir. 2002). *Matthews* was decided based on actual evidence introduced at a jury trial. Here, McCarthy had no opportunity to obtain any evidence or to question the individual motives of the

voting commissioners. The district court required McCarthy to meet a high evidentiary standard applicable at trial, where he would bear the burden of proof, without the benefit of discovery. Nonetheless, he alleged significant facts which, if taken as true, would support the reasonable inference that the Cordele City Commission was motivated by racial discrimination.

Plaintiffs require discovery to gain insight to the state of the mind of decisionmakers:

> [R]elevant evidence for proving illegal discrimination is evidence that demonstrates the state of mind of the employer (or, more concretely, the decisionmaker) at the time of the employment decision. The only "eyewitness" to the state of mind of the decisionmaker is the decisionmaker himself. Consequently, the only direct evidence of illegal discrimination under the dictionary definition would be testimony from the decisionmaker that he took an adverse employment action against the plaintiff on the basis of a protected personal characteristic. Any other form of evidence requires at least one inference to reach the conclusion that the employer has impermissibly discriminated

*Wright*, 187 F.3d at 1294–95. It was error for the district court to require McCarthy to prove the state of mind of decisionmakers when he filed his complaint, especially when multiple decisionmakers are involved.

 Moreover, the district court's reliance on *Matthews* is erroneous in light of more recent Supreme Court authority holding that members' silence in the face of discriminatory statements from other commission members constitutes evidence of discriminatory intent by the entire commission. *Masterpiece Cakeshop, Ltd. v.*

*Colorado Civil Rights Commission,* 138 S. Ct. 1719 (2018). In *Masterpiece*, a Christian baker refused to prepare a cake for a same-sex couple's wedding, on the grounds that to do so violated his religious beliefs. *Id.* at 1724. The couple filed a charge against the baker under Colorado's anti-discrimination laws; and the seven-member Colorado Civil Rights Commission convened a series of public hearings to determine whether the baker violated the civil rights laws by refusing to bake the cake. *Id.* at 1725-26. The commission ultimately found against the baker, who challenged the decision in federal court. *Id.* When the matter came before the U.S. Supreme Court the issue was whether the commission found against the baker because of his religion in violation of the First Amendment. During public hearings, two members of the commission made hostile comments toward the baker's religious beliefs. *Id.* at 1729. As for the remaining members, "[t]he record shows no objection to these comments from other commissioners." *Id.* The Supreme Court inferred discriminatory intent based on the <u>silence</u> of five of the seven commissioners: "On these facts, the Court must draw the inference that [the baker's] religious objection was not considered with the neutrality that the Free Exercise Clause requires." *Id.* at 1731. Thus, when considering the existence of discriminatory intent of a seven-member commission, a plaintiff is not required to show a majority of the  members acted with discriminatory intent. Under *Masterpiece,* it is sufficient if a majority remains <u>silent</u> in the face of discriminatory

comments from other commissioners. It was error to require McCarthy to prove a majority of the Cordele City Commission voted with individual discriminatory intent, particularly at the pleading stage.

### (2)    This district court improperly rejected McCarthy's Cat's Paw theory.

Without the benefit of discovery to learn exactly why each commissioner claims he or she voted the way they did, McCarthy also pled facts to support a "cat's paw" theory. McCarthy alleged, "Deriso led, directed, and encouraged replacing McCarthy with an African American candidate and effectively terminating McCarthy." Doc. 1, ¶ 31. Deriso issued a campaign promise that he would replace McCarthy with a woman of color within ninety (90) days of being sworn into office. Deriso apparently fulfilled his promise on day one.

In dismissing McCarthy's cat's paw theory, the district court cited, but ignored, McCarthy's "short and plain statement" that Deriso "led, directed, and encouraged" the Commission to terminate and replace McCarthy. Instead, the court simply stated, "Plaintiff fails to allege facts that would support a claim against the City under a cat's paw theory or any other theory of municipal liability." (Order, p. 6) The cases the district court relied upon were tried to juries – not on motions to dismiss. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999); *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294 (11th Cir. 1988); and *Llampallas v. Mini-Cirs., Lab, Inc.,* 163 F.3d 1236, 1248 (11th Cir. 1998).

In rejecting the "cat's paw" theory, the district court found a lack of "evidence" that the voting commissioners were influenced by Deriso's personal discriminatory animus or that the voting commissioners may have rubberstamped Deriso's discriminatory acts. This finding flies in the face of McCarthy's well-pled allegations that Deriso planned to eliminate McCarthy because of his race and executed that plan immediately after being sworn into office. At the pleading stage, McCarthy does not know who recruited the black candidate to replace him, when the interviews or conversations to hire her before January 4, 2022, took place, who participated in those interviews, who recommended or encouraged replacing McCarthy, details of Deriso's behind-the-scenes influence during executive session (or before), or related evidence that would be identified in discovery. Without discovery, it is unclear how the district court could know. At a minimum, due process requires that McCarthy be permitted to flesh out his well-pled facts during discovery.

### C.    It was Error to Dismiss McCarthy's § 1981 Claim Against Deriso Individually

McCarthy's §1981 claim against Deriso individually should survive a motion dismiss based on the same grounds addressed above. Although the district court acknowledged that McCarthy's allegations raised an "inference of discrimination," it nonetheless concluded that he failed to allege "facts sufficient to 'support a reasonable expectation that discovery would reveal evidence that Deriso *acted* with racially discriminatory animus.'" Doc. 13, p. 11 (emphasis in original) (citing

*Henley v. Turner Broadcasting System*, 267 F.Supp.3d 1341, 1352 (N.D. Ga., 2019)). The basis for the district court's conclusion was that Deriso, as a non-voting member of the Commission, was unable to discriminate against McCarthy because he did not cast a vote. This conclusion is clearly erroneous. This Court has held that individuals who recommend termination for discriminatory reasons which lead to an adverse action can be individually liable for discrimination even when they act indirectly. *See Griffin v. City of Jacksonville*, 762 Fed. Appx. 965, 972 (11th Cir. 2019). "Under our precedent, …. cat's paw liability [against an individual] is appropriate only when a person took some sort of action for example, making a termination  recommendation that led to the adverse action against the plaintiff." *Id.* at 972 (citing *Quinn v. Monroe County,* 330 F. 3d 1320, 1327 (11th Cir. 2003)). This is just such a case. Based on overwhelming allegations of Deriso's discriminatory intent and his influential role as Chair, McCarthy alleged Deriso "led, directed, and encouraged" the decision. Doc. 1, ¶ 31. Elsewhere, the complaint alleges Deriso "orchestrated [McCarthy's] termination." *Id.* ¶ 46.

The district court's reliance on *Henley*, *supra*, appears to be misplaced. The district court in *Henley* dismissed the Plaintiff's claims because they failed to allege proper similarly-situated comparators. 267 F.Supp.3d at 1352. Thus, they failed to allege any "purposeful discrimination." *Id.* The facts at bar are a far cry from those in *Henley*. First, this is a discriminatory discharge case. Second, McCarthy alleges

Deriso's detailed discriminatory plans and actions which, resulted in his termination and replacement with a black candidate. If true, McCarthy's allegations plainly set forth a claim of unconstitutional and racially discriminatory firing.

### D.    The District Court Erred by Disallowing Plaintiff the Right to Amend his Complaint.

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. ***The court should freely give leave when justice so requires***." Federal Rule of Civil Procedure, R. 15 (emphasis added). The Supreme Court has long held that Rule 15's mandate that the opportunity to amend be freely given "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). As the Court elaborated,

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.*; *see also*, *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11ᵗʰ Cir. 1988) (requiring a "substantial reason" to deny leave to amend.)

The district court's decision below can only be described as hyper-technical.

The court rejected Plaintiff's request to amend his complaint, because "Plaintiff neither sets forth the substance of the proposed amendment nor attaches a copy of the proposed amended complaint." Doc. 13, p. 5, n. 3. This rationale fails to establish a basis to deny McCarthy an opportunity to correct any deficiencies, especially in light of the significant factual allegations contained in his first attempt to draft his complaint. Of course, without the benefit of the district court's rejection of his pleaded facts, or the district court's view that a conclusory allegation that "each commissioner voted with discriminatory intent" would somehow convert his complaint into something more facially plausible, there was no way for Plaintiff to know or to guess which claimed deficiency needed to be remedied. The district court's rationale would require that McCarthy accept the Defendants' hypothetical assertions, for example, as to the motivations that led to his firing and to presuppose, as the district court did, that each commissioner acted in the absence of an unconstitutional motive or that Deriso did not act on his stated discriminatory goals. The district court's reliance on *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002), is not analogous to this case because unlike the present circumstances, the plaintiff in *Wagner* never asked for the opportunity to amend his complaint in the district court. He waited until the case was on appeal. Hence, the "two bites at an appeal" *dicta*. Plaintiff plainly requested as alternative to denying Defendants' motion to dismiss that he be permitted to amend his complaint "should

the Court require additional factual allegations." Doc. 7, p. 16.

Finally, the district court's decision to dismiss McCarthy's claims without prejudice does not change the analysis. When a Title VII claim is dismissed without prejudice outside the 90-day limitations period, it acts as a dismissal with prejudice and cannot be refiled. *Miller v. Georgia*, 223 F. Appx. 842, 845 (11th Cir. 2007). Because McCarthy received his "right to sue" from the EEOC on May 4, 2022, [Doc. 1, ¶ 38], he cannot refile his Title VII claim. Although the district court could have ordered tolling to preserve the claim, *see Childers v. Wayne Cnty. Bd. of Educ.*, No. CV207-70, 2007 WL 9702358, at *4 (S.D. Ga. Dec. 17, 2007), it did not do so.

Under the circumstances presented here, where the district court faults the absence of a few conclusory allegations, and where the balance of the factual allegations paints a convincing mosaic of direct and circumstantial proof of discrimination, justice requires that McCarthy have the opportunity to amend his complaint.

## CONCLUSION

Based upon the foregoing, McCarthy respectfully requests that this Court reverse the district court's Order granting Defendants'/Appellees' motion to dismiss and remand the case for discovery and trial.

Respectfully submitted: May 15, 2023.

*/s/ Andrew Y. Coffman*
Andrew Y. Coffman
**PARKS, CHESIN & WALBERT, P.C.**  Georgia Bar No. 173115
75 14th Street, N.E., 26th Floor  acoffman@pcwlawfir.com
Atlanta, GA 30309  J. Daniel Cole
T: 404-873-8000  Georgia Bar No. 450675
F: 404-873-8050  dcole@pcwlawfirm.com
***Counsel for Appellant***

- 23 -

**CASE NO. NO. 23-11036**
**ROLAND MCCARTHY V. CITY OF CORDELE, GEORGIA AND**
**JOSHUA DERISO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES**
**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,**
**TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 MSO (16.0.9126.2282) 32-bit in 14-point Times New Roman.

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on May 15, 2023, the foregoing Brief of Appellant was filed through the Court's electronic filing system, which will automatically provide notification of filing to the following attorneys of record:

Michael M. Hill, Esq.
Kelli N. Spearman, Esq.
**FREEMAN, MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
mhill@fmglaw.com
kelli.spearman@fmglaw.com

/s/ *Andrew Y. Coffman*
Andrew Y. Coffman
Georgia Bar No. 173115
acoffman@pcwlawfirm.com